UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| TAMMY SUE MATTHES, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 1:12-CV-00014-CAS-NAB |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Tammy Sue Matthes' ("Matthes") application for supplemental security income ("SSI") under the Social Security Act ("Act"), 42 U.S.C. § 1381. Matthes alleged disability due to hearing problems, multiple sclerosis, and fibromyalgia. (Tr. 279.) This matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Matthes filed a Brief in Support of her Complaint. [Doc. 20.] The Commissioner filed a Brief in Support of the Answer. [Doc. 19.]

## I. PROCEDURAL HISTORY

Matthes applied for Supplemental Security Income ("SSI") on October 30, 2007, alleging July 1, 2006 as the onset date of her disability. (Tr. 261-63.) On March 21, 2008, the Social Security Administration denied Matthes' SSI claim. (Tr. 126-30.) The Social Security Administration approved Matthes' request for a hearing in front of Administrative Law Judge Robert G. O'Blennis ("ALJ"). (Tr. 131-137.) The ALJ conducted hearings and issued a written decision on July 19, 2010, upholding the denial of benefits. (Tr. 9-26.) On November 22, 2011, the Appeals Council denied Matthes' request for a review. (Tr. 1-6.) The ALJ's decision is

therefore the Commissioner's final decision in this matter. On January 26, 2012, Matthes filed this appeal. [Doc. 1.]

## II. ALJ DECISION

The ALJ found that Matthes was not disabled within the meaning of the Social Security Act (Tr. 12-22.) In making that determination, the ALJ reviewed the evidence to determine if Matthes had been disabled since October 1, 2007. (Tr. 12.) First, the ALJ found that Matthes had not engaged in gainful activity since October 1, 2007. (Tr. 16.) Next, the ALJ found that Matthes had severe impairments of fibromyalgia, hearing loss, and major depressive disorder. (Tr. 17.) The ALJ concluded that Matthes' other impairments were not severe. (Tr. 17.)

The ALJ then found that Matthes did not have any impairment that is presumed disabling by Social Security Administration. (Tr. 17.) The ALJ concluded that Matthes' hearing loss did not meet the listing of impairments under 20 C.F.R. § 404 because Matthes failed to show that her hearing is not restorable to the level required under the listing; that Matthes' fibromyalgia did not meet a listing because examiners did not note the required signs and laboratory results required under any particular listing; and that Matthes' depressive disorder did not fit the Part B criteria for mental impairments. (Tr. 17.)

In determining whether Matthes is able to perform sustained work activities, the ALJ found that Matthes' residual functional capacity ("RFC") limited her to simple, repetitive work, without changes in work location or routine, where she could receive instructions in a loud voice in a quiet environment. (Tr. 18.) The ALJ determined that Matthes had the RFC to lift 10 pounds frequently and lift 20 pounds occasionally. (Tr. 18.) She can occasionally push and pull with force, climb ramps or stairs, stoop, kneel, crouch, and crawl. (Tr. 18.) Matthes was also limited to standing, sitting, or walking for about six hours. (Tr. 18.) The ALJ also found that she

should avoid work above the shoulder level and never climb ladders, ropes, or scaffolds. (Tr. 18.)

Regarding the medical opinions, the ALJ gave little weight to the opinion of Dr. Reid, a non-examining medical expert, that Matthes was limited in her social functioning because "no examiner observed" that Matthes had issues with social functioning, even considering her hearing loss. (Tr. 19.) The ALJ did not give full weight to Dr. Burchett's assessment, stating it was not supported by the evidence as a whole. The ALJ gave significant weight to the opinion of Dr. Spencer, an examining physician. (Tr. 19.)

Because the ALJ also determined that Matthes had no past relevant work, the Commissioner had the burden to show that jobs existed in the national economy. (Tr. 20.) The ALJ found that jobs exist in the national economy that Matthes could perform, considering her vocational factors and RFC. (Tr. 20.) The ALJ concluded that Matthes was not disabled within the meaning of the Social Security Act between October 1, 2007 and date of the decision, July 19, 2010. (Tr. 22.)

## III. ADMINISTRATIVE RECORD

### A. Testimony before the ALJ

The ALJ held hearings on December 9, 2008, November 18, 2009, and July 1, 2010. (Tr. 27-116.) Matthes appeared with counsel.[1] (Tr. 27-106). Matthes, James D. Reid, M.D., a medical expert, Brenda Young, a vocational expert, and James E. Israel, a vocational expert, testified at the hearings. (Tr. 27-106.)

---

[1] The ALJ granted a continuance during the 2008 hearing so that Matthes could obtain counsel. (Tr. 107-115.) Matthes appeared with counsel at the 2009 and 2010 hearings.

3

### 1. Claimant's testimony

Matthes testified that her birth date was September 29, 1963. (Tr. 66.) She obtained her GED. (Tr. 68.) She also completed a building trades class while incarcerated. (Tr. 68.) She did not have a driver's license. (Tr. 68.)

Matthes held a variety of jobs during the fifteen years preceding the hearings. Matthes worked as a prep cook at Steak 'n Shake for over a year. (Tr. 71.) She worked as a sorter for a thrift store called Value Village. (Tr. 72.) Matthes did not work from 2001-2003 because she was incarcerated. (Tr. 72.) She worked at a Lee's Famous Fried Chicken, cleaning tables and packing food into bags. (Tr. 72). Matthes had some difficulty remembering her work history at the hearings. (Tr. 70, 72.)

Matthes testified that severe pain caused by fibromyalgia prevented her from working. (Tr. 73.) Within the past eight months, Matthes had her appendix and a cyst on her face removed. (Tr. 93.) Matthes testified that she only moved around for about an hour a day because of the pain. (Tr. 46-47.) Matthes intermittently wore hearing aids for seven to ten years to correct her hearing loss. (Tr. 76.) The hearing aids were not always effective. (Tr. 29, 76.) Matthes testified that she had been taking glaucoma medication for four to five months. (Tr. 78.) Matthes had been prescribed medication for depression, but stopped taking it because of weight gain. (Tr. 79.) Matthes took over-the-counter medication to help with pain and sleeping problems. (Tr. 80.)

Matthes testified she typically started her day at 11:00am and watched TV. (Tr. 82.) She sporadically washed dishes and cooked once in a while. (Tr. 83.) She shopped at a grocery store roughly once a month. (Tr. 85.) She did not belong to any social or religious groups. (Tr. 85.)

She did not have any friends or nearby family. (Tr. 91.) Matthes either lived with her boyfriend or in a shelter. (Tr. 90-91.) Matthes had a prior drinking problem, but had abstained from alcohol for ten years before her hearing. (Tr. 92.)

###    2.    Vocational Expert Testimony

Vocational expert James E. Israel ("VE Israel") was present for Matthes' testimony. (Tr. 93.) VE Israel classified Matthes' prep cook job as unskilled and primarily light. (Tr. 93.) VE Israel classified Matthes' sorter job as unskilled and light. (Tr. 94.) VE Israel classified Matthes' thrift store job as unskilled and light. (Tr. 94.) VE Israel testified that Matthes had no gainful work history. (Tr. 94.)

The ALJ asked VE Israel whether an individual of Matthes' age, education, and work experience would be able to perform either Matthes' past work or other work, if that individual: (1) could lift 20 pounds occasionally and 10 pounds frequently; (2) could stand and/or walk with normal breaks for six hours out of an eight hour day; (3) could sit with normal breaks for at least six hours out of an eight hour day; (4) should never climb ladders, ropes, or scaffolds; (5) could stoop, kneel, crouch, and crawl occasionally; (6) could balance at heights only occasionally but otherwise had normal balance; (7) could not be exposed to whole body vibration; (8) should avoid working near dangerous unprotected heights or machinery; (9) should be limited to simple and/or repetitive work that did not require close interaction with the general public; (10) does not have "real good" hearing; (11) would need to be spoken to in a loud, clear voice. (Tr. 94-96.) VE Israel testified that none of Matthes' past work could be performed, particularly because of the interpersonal and audible factors listed in the above hypothetical. (Tr. 96.) VE Israel testified that a sorter job could be performed at a sedentary level, at 2,100 jobs statewide. (Tr.

5

96.) VE Israel also testified that a light assembler position could be performed, at 3,100 jobs statewide, and a light packer position could be performed, at 1,300 jobs statewide. (Tr. 96-97.)

The ALJ then asked if the number of jobs would change if the person needed discretion in whether to sit or stand. (Tr. 97.) VE Israel testified that the estimates should be reduced by 10% if the person needed to stretch or briefly change position while maintaining workflow. (Tr. 98.) VE Israel further testified that competitive employment would be precluded if the person missed more than two days per month for a medical reason. (Tr. 98.) VE Israel also testified that some employers would not tolerate the person leaving early, showing up late, or taking additional breaks for medical reasons at least once a week. (Tr. 99.)

Vocational expert Brenda Young ("VE Young") classified Matthes' prep cook job as light and semi-skilled. (Tr. 50.) VE Young classified Matthes' sorter job as unskilled and "light to medium, depending on the lifting required." (Tr. 50.)

First, The ALJ asked VE Young whether an individual of Matthes' age, education, and work experience would be able to perform either Matthes' past work or other work, if that individual: (1) could lift 10 pounds frequently and 20 pounds occasionally; (2) could sit, stand or walk six hours in an eight-hour work day; (3) avoided work above shoulder level; (4) avoided forceful pushing or pulling generally; (5) could reach in all other directions frequently; (6) could handle, finger, and feel continuously or frequently; (7) could never climb ladders, ropes or scaffolds; (8) could occasionally climb ramps or stairs, stoop, crouch, kneel, and crawl; (9) needed to receive instructions given in a loud voice, in a quiet environment, because of hearing deficits; (10) limited to simple and repetitive-type work without frequent changes in routine or changes in work location. (Tr. 50-52.) VE Young testified that Matthes' past sorter job could be performed, at less than 100 jobs in the local economy. (Tr. 52.) Other jobs that

6

could be performed are dining room helper, at about 4,500 jobs in the local economy, light jobs or housekeeping type jobs, at about 8,000 in the local economy. (Tr. 52-53.)

Second, the ALJ changed the above hypothetical to the sedentary level, with lifting up to 10 pounds, and standing and walking for only two hours out of an eight-hour workday, and with all other characteristics the same. (Tr. 53.) VE Young testified that small product assembly jobs were appropriate, at approximately 3,000 in the local economy. (Tr. 53.) VE Young testified that competitive employment would be precluded by two or more missed days of work per month or additional break time for medical reasons. (Tr. 53-54.)

### 3. Medical Expert Testimony

Dr. James D. Reid, a clinical psychologist, testified as a medical expert. (Tr. 31.) Dr. Reid testified that Matthes should not have problems with the concentration, persistence, and pace needed to complete simple, routine, repetitive tasks. (Tr. 37.) Dr. Reid testified that Matthes would have difficulty with complex tasks. (Tr. 38.) Dr. Reid testified that Matthes "might" be markedly impaired at complex tasks with the public, supervisors, and co-workers if her hearing impairment was factored in. (Tr. 38.)

### B. Medical Records

On January 30, 2006, Matthes sought treatment at the Family Care Health Center for back pain and generalized pain and soreness over her entire body. (Tr. 347.) Matthes reported her pain as a 7 out of 10 and on some days a 9 out of 10. (Tr. 347.) Matthes reported difficulty getting dressed and missing days of work. (Tr. 347.) Robin Musselman, A.P.R.N., B.C. followed up with Matthes on February 6, 2006 with an assessment of fibromyalgia. (Tr. 345.) Matthes was advised to regularly exercise. (Tr. 330, 336, 345.) Matthes reported exercising on a stationary bike and a treadmill. (Tr. 328.) On June 5, 2006, Matthes reported that her

7

fibromyalgia pain interfered with her work at a thrift store. (Tr. 340.) Musselman noted that Matthes had painfully trigger points bilaterally along the spine, elbow, and knees at multiple visits to Family Care Health Center. (Tr. 336, 340.) Musselman noted that Matthes had decreased hearing at several visits. (Tr. 336, 340.) Matthes also had edematous[2] ear canals. (Tr. 332.) Matthes was advised that the fibromyalgia pain would not go away. (Tr. 330.) Matthes was prescribed several medications for fibromyalgia and depression, including Cymbalta, Lyrica, Wellbutrin, Tramadol, and cyclobenzaprine during that time period. (Tr. 336, 340, 345.)

Between December 18, 2007 and March 11, 2009, Matthes visited Grace Hill Neighborhood Health Center for fibromyalgia treatment. Matthes reported having constant pain over her entire body. (Tr. 487.) Matthes was routinely counseled about diet and exercise. (Tr. 486, 482, 490.) There were signs that Matthes was improving overall on July 8, 2008. (Tr. 494.) Matthes was prescribed vitamin D supplements, because a vitamin D deficiency may have been related to her pain. (Tr. 494.) Matthes was also prescribed acetaminophen and depression counseling. (Tr. 494, 498.)

On March 19, 2008, Matthes was examined by Inna Park, M.D. (Tr. 377-79.) Dr. Park concluded that Matthes had musculoskeletal complaints related to fibromyalgia or possible multiple sclerosis. (Tr. 379.) Dr. Park found that Matthes was hard of hearing, and that her hearing ability affected the interview and Matthes would benefit from hearing aids. (Tr. 379.)

On September 17, 2008, Matthes' hearing was evaluated. (Tr. 473.) Matthes reported difficulties with communication, including difficulty in one-on-one conversations, small group conversations, and in telephone conversations. (Tr. 473.) Pure tone audiometric testing showed hearing loss for both ears: severe mixed loss in the right ear and moderately-severe to severe

---

[2] Edematous is marked by edema, which is an accumulation of watery fluid in cells or intercellular tissues. Stedman's Medical Dictionary 566-67 (27th ed. 2000).

sensorineural hearing loss for the left ear. (Tr. 473.) Matthes received hearing aids on March 6, 2009. (Tr. 473.) Matthes reported feeling satisfied with the sound quality. (Tr. 473.) Matthes had previously received hearing aids in 2004. (Tr. 534.)

On January 22, 2009, Matthes was categorized as glaucoma-suspect. (Tr. 546.) On October 25, 2009, Matthes reported blurred vision and itchy eyeballs and eyelids. (Tr. 582.) Matthes was diagnosed with glaucoma coag.[3] (Tr. 582.) Matthes was prescribed Betoptic for her eye problems. (Tr. 584.)

Matthes visited Barnes Jewish Hospital with complaints of hand pain and generalized weakness on April 7, 2009. (Tr. 557.) Matthes reported difficulty climbing stairs and brushing her hair. (Tr. 557.) Matthes was taking Tramadol and Oxycodone-acetaminophen at that time. (Tr. 557.) At an annual assessment at Barnes Jewish Hospital on March 12, 2009, Matthes reported that she did not have difficulty walking, getting dressed, bathing, grooming, eating, cooking, cleaning, or shopping. (Tr. 567.)

Matthes saw Sunil G. Chand, M.D. in 2009 and 2010 at the Chand Medical Office. Matthes did not report any vision changes during these years to Dr. Chand. (Tr. 591, 594, 599, 603, 607, 611, 643, 647, 650, 654, 657, 663.) Matthes was taking dorzolamide eye drops, acyclovir, nasal spray, ibuprofen, piroxicam, and Flexiril during this time period. (Tr. 594, 598, 602, 606.)

Thomas J. Spencer, Psy.D. conducted a psychological examination of Matthes on March 1, 2010. (Tr. 619.) Matthes did not have any impairment in her grooming, hygiene, eye contact, and was able to ambulate without assistance. (Tr. 620.) Dr. Spencer found minimal to moderate impairment in Matthes' attention, sequencing, mental flexibility, and visual search and motor

---

[3] Glaucoma combined angle is a disease of the eye characterized by increased intraocular pressure, excavation, and atrophy of the optic nerve producing defects in the field of vision with angle closure and open-angle mechanisms in the same eye. Stedman's Medical Dictionary 748-49 (27th ed. 2000).

9

function. (Tr. 622.) Matthes' diagnostic formulation included major depressive disorder. (Tr. 622.) Matthes reported occasional crying spells, hopelessness, helplessness, lack of motivation, and tiredness. (Tr. 620.) On March 8, 2010, Dr. Spencer note moderate impairment in the ability to understand and remember complex instructions, carry out complex instructions, and to make judgments on complex work-related decisions. (Tr. 623.) Dr. Spencer noted moderate impairment in Matthes' ability to respond to usual work situations and changes in routine work settings. (Tr. 624.) Dr. Spencer noted a mild impairment in Matthes' ability to make judgments on simple work related instructions and interact with others, including the public, supervisors, and co-workers. (Tr. 624.)

Barry Burchett, M.D. examined Matthes at Tri-State Occupational Medicine, Inc. on March 4, 2010. (Tr. 628.) With corrected vision, Matthes' visual acuity was 20/50 in both eyes. (Tr. 630.) Matthes showed at least a moderate hearing impairment, even in the quiet examination room. (Tr. 630.) Questions had to be repeated, even though Matthes wore a hearing aid in her left ear. (Tr. 628, 630.) Fifteen of eighteen standard fibromyalgia trigger points were tender. (Tr. 630.) Six of ten control points were tender. (Tr. 630.)

## IV. LEGAL STANDARD

The ALJ's decision is affirmed if it is "supported by the substantial evidence on the record as a whole." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (quoting *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005)). Evidence that both supports and detracts from the ALJ's decision will be considered. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). The ALJ's decision, however, will not be reversed merely because some evidence may support a different conclusion. *Id.* If the evidence supports two inconsistent decisions, one of which represents the ALJ's findings, the ALJ's decision will be affirmed. *Id.* A denial of benefits must

be affirmed if there is substantial evidence to support it, even if this Court would have weighed the evidence differently. *Charles v. Barnhart*, 375 F.3d 777, 782-83 (8th Cir. 2004).

The definition of disability for social security purposes is the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 416.905(a). If a claimant is able to do substantial gainful work in that exists in the national economy, the claimant is not disabled. *Id*. The claimant has the burden to establish entitlement to social security benefits. *Fastner v. Barnhart*, 324 F.3d 981, 983 (8th Cir. 2003) (citing *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir.1995)).

To determine whether the claimant is disabled, the Commissioner uses a five-step sequential evaluation process. 20 C.F.R. § 416.920(a)(1). At step one, the Commissioner determines whether the claimant is engaging substantial gainful activity. If the claimant is engaging in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

At step two, the Commissioner determines whether the claimant has a severe medically determinable physical or mental impairment that meets the duration requirement. 20 C.F.R. § 416.920(a)(4)(ii). To meet the duration requirement, the severe medical impairment must result in death, or it must have lasted or must be expected to last for a continuous period of at least 12 months. 20 CFR § 416.909. If the duration requirement is not met, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(ii).

At step three, the Commissioner determines the medical severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(iii). If the impairment meets or exceeds an impairment in 202 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is disabled. *Id.*

At step four, the Commissioner determines whether the claimant can still perform past relevant work. 20 C.F.R. § 416.920(a)(iv). If the claimant can still perform past relevant work, the claimant is not disabled. *Id.*

At step five, the Commissioner determines whether the claimant can make an adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). The Commissioner considers the assessment of the claimant's residual functional capacity and the claimant's age, education, and work experience. *Id.* If the claimant is able to make adjustments to other work, the claimant is not disabled. *Id.*

## V. DISCUSSION

Matthes alleges two points of reversible error: (A) the ALJ failed to characterize Matthes' glaucoma as a severe impairment; and (B) the ALJ failed to give proper weight to the opinion of Dr. Reid.

### A. Matthes' Glaucoma

Matthes argues that the ALJ erred by characterizing Matthes' glaucoma as non-severe. The ALJ characterized Matthes' fibromyalgia, hearing loss, and major depressive disorder as severe, to the exclusion of her other impairments. (Tr. 17.) The ALJ did not specifically discuss glaucoma. (Tr. 17.) Substantial evidence supports the ALJ's finding that Matthes' glaucoma was non-severe because neither Matthes' testimony nor her medical records show that her glaucoma caused work-related limitations. *Brockman v. Sullivan*, 987 F.2d 1344, 1348 (8th Cir. 1993).

The ALJ was not obligated to investigate an impairment that Matthes did not allege as a basis of disability on her application for benefits or during her testimony. *Brockman,* 987 F.2d at 1348. Matthes did not allege glaucoma or vision problems as a basis for disability (Tr. 279.) Nothing in Matthes' records indicates that a physician placed limitations on her because of her vision problems. *Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004). Diagnosis and treatment of glaucoma is not sufficient to confer social security benefits if the evidence fails to show that the claimant is disabled because of the glaucoma. *See Young ex rel Trice v. Shalala*, 52 F.3d 200 (8th Cir. 1995).

Omitting specific discussion of Matthes' glaucoma was not an error because Matthes never alleged that her glaucoma resulted in work-related limitations. *McNamara*, 590 F.3d at 612. Matthes did not testify about work-related limitations related to glaucoma at her hearings before the ALJ. *Id.* at 611. Matthes mentioned her prescription eye drops, but at no point did she testify that her glaucoma affected her ability to work. (Tr. 77-78.) Matthes did not seek to add glaucoma to the ALJ's hypothetical question to the vocational experts, even though she added other impairments. (Tr. 99-100.) Due to the paucity of evidence regarding Matthes' glaucoma, the ALJ's conclusion that Matthes' glaucoma was non-severe is supported by the substantial evidence on the record as a whole.

### B. Dr. Reid's Testimony

Matthes argues that the ALJ erred by giving little weight to Dr. Reid's testimony. A non-examining medical expert's opinion generally receives less weight that the opinion of an examining medical expert. *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010); 20 C.F.R. § 416.927(c)(1) ("Generally, we give more weight to the opinion of a source who has examined

you than to the opinion of a source who has not examined you"). Dr. Reid, a non-examining medical expert, testified that Matthes may have marked impairment in social functioning:

> I agree with Dr. Spencer that in terms of concentration, persistence and pace she should have no difficulty with simple, routine, repetitive type tasks, but she may very well have difficulty with complex tasks and also, because I'm factoring in her hearing impairment, too, so complex tasks with the public and supervisors and co-workers and that kind of stuff, I think she would be -- she might be markedly impaired.

(Tr. 37-38.) Dr. Spencer, an examining physician whose opinion was given significant weight, found that Matthes had a mild impairments related to social function. (Tr. 624.) In that context, "mild" meant that there was "slight limitation in this area, but the individual can generally function well." (Tr. 623.) The ALJ did not err by giving Dr. Spencer's opinion significant weight and giving Dr. Reid's opinion little weight.

Matthes argues that Dr. Reid's testimony should not have been discounted because his testimony was consistent with Matthes' records. Matthes cites an evaluation by the Missouri Division of Vocational Rehabilitation in which a counselor noted an impairment in her interpersonal skills. (Tr. 539-40.) However, that particular evaluation occurred in 2004, years before the alleged disability onset. (Tr. 539.) When Matthes was evaluated by the same counselor at the Missouri Division of Vocation Rehabilitation in 2008, after the alleged onset of disability, no interpersonal impairments were found. (Tr. 529-31.) Matthes further cites the many instances in which a medical professional noted her hearing loss. Matthes' hearing loss is undisputed, as the ALJ found that her hearing loss was severe in step two of his analysis. (Tr. 17.)

Matthes argues that the ALJ erred by failing to include Dr. Reid's testimony in his RFC and his hypotheticals to the vocational experts. The ALJ did not err because the hypothetical questions and the RFC adequately included the consequences of Matthes' hearing loss and its

effect on her ability to interact with others. *See Buckner v. Astrue*, 646 F.3d 549, 560-61 (8th Cir. 2011); *Gragg v. Astrue*, 615 F.3d 932, 940-41 (8th Cir. 2010). A vocational expert's testimony is substantial evidence when based on a hypothetical that includes all the impairments that the ALJ found substantially supported by the record as a whole. *Buckner*, 646 F.3d at 561; *Gragg*, 615 F.3d at 940. The ALJ found that Dr. Reid's opinion was inconsistent with the evidence, so the ALJ was not required to include that opinion in the hypothetical questions to the VE.

The ALJ's hypothetical did not need to use "specific diagnostic terms used in medical reports, but instead should capture the concrete consequences of those impairments." *Buckner,* 646 F.3d at 561 (quoting *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010)). The concrete consequences of Dr. Reid's testimony were included in the vocational expert testimony. Dr. Reid testified that Matthes may have difficulties with complex tasks and/or complex tasks with the public, supervisors, and co-workers, factoring in her hearing problems. (Tr. 37-38.) VE Israel's testimony was limited to a person without good hearing who was limited to "simple and/or repetitive-type work that did not require close interaction with the general public" and who would have to be spoken to in a "louder voice." (Tr. 95-96.) VE Israel explicitly considered Matthes' "restrictions in the interpersonal and audible factors." (Tr. 96.) VE Young's testimony was explicitly limited to a person with hearing deficits who needed instructions in a quiet environment and was limited to simple and/or repetitive-type work. (Tr. 52.) Both vocational experts heard Matthes testify in person during their respective hearings. (Tr. 49, 93.) By restricting the hypothetical person to simple tasks that did not require interaction with the public, the ALJ captured all of the concrete consequences of Dr. Reid's opinion.

Matthes references her testimony about her personal relationships. Matthes testified that she had no nearby family members or friends, and that she has no contact with her neighbors. (Tr. 91.) Matthes testified that she had previously stayed in a shelter because of problems with her boyfriend. (Tr. 90-91.) Matthes' relationship problems could be consistent with Dr. Reid's conclusion that she suffered social function impairments. The existence of some evidence that could support a decision other than the ALJ's decision, however, does not justify a reversal when the ALJ's decision is ultimately supported by the substantial evidence on the record as a whole. The ALJ's decision to discount Dr. Reid's testimony was not an error.

## VI. CONCLUSION

For the reasons set forth above, the undersigned finds that substantial evidence on the record as a whole supports the Commissioner's decision that Matthes is not disabled.

Accordingly,

**IT IS HEREBY RECOMMENDED** that relief sought by Matthes in her Complaint for Judicial Review of Decision of the Commissioner of Social Security [Doc. 1] and Plaintiff's Brief [Doc. 20] be **DENIED** and that judgment be entered in favor of the Commissioner.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Halpin v. Shalala*, 999 F.2d 342, 345 (8th Cir. 1993).

Dated this 26th day of February, 2013.

/s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE